1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DEBORAH A. OLGUIN,                     )   Case No. EDCV 11-1802-OP
                                        )
                    Plaintiff,          )
                                        )
         v.                             )   MEMORANDUM OPINION AND
                                        )   ORDER
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )
_____        )

    The Court[1] now rules as follows with respect to the disputed issues listed in
the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

_____

    [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the
United States Magistrate Judge in the current action.  (See ECF Nos. 6, 11.)

    [2] As the Court stated in its Case Management Order, the decision in this
case is made on the basis of the pleadings, the Administrative Record, and the Joint
Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules
of Civil Procedure, the Court has determined which party is entitled to judgment
under the standards set forth in 42 U.S.C. § 405(g).   (ECF No. 4 at 3.)

1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)     Whether the Administrative Law Judge ("ALJ") properly considered the findings of Plaintiff's treating physician; and

(2)     Whether the Vocational Expert ("VE") provided an adequate basis for her opinion regarding alternative work.

(JS at 8.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

/ / /

2

1
2

### III.

### DISCUSSION

3   **A.    The ALJ's Findings.**

4        The ALJ found that Plaintiff has severe physical impairments, including

5   hypertension, history of hypothyroidism, liver cirrhosis with esophageal varices

6   and history of esophageal bleeding, irregular heartbeat, history of diabetes, and

7   history of anemia.  (AR at 17.)  The ALJ further found that Plaintiff had the

8   residual functional capacity ("RFC") to perform light work, limited by the

9   following accommodations: lift and carry ten pounds frequently and twenty pounds

10  occasionally; stand and walk up to four hours in an eight-hour day but no more

11  than fifteen minutes at a time; sit unrestricted with normal breaks; occasionally

12  climb, balance, stoop, kneel, crouch, and crawl; work absence once or twice a

13  month; and no detailed or complex tasks.  (Id. at 18.)  Relying on the testimony of

14  the VE, the ALJ determined that Plaintiff was unable to perform her past relevant

15  work as a property manager, but could perform alternative work as a case aide.

16  (Id. at 20-21.)

17  **B.    The ALJ Properly Rejected the Opinion of the Treating Liver**
18  **Specialist.**

19        Plaintiff contends that the ALJ erred in giving no weight to the functional

20  capacity assessment of Plaintiff's treating liver specialist, Mohamed El-Kabany,

21  M.D.  (JS at 8-10.)

22        On March 15, 2011, after seeing Plaintiff just two times (AR at 75),  Dr. El-

23  Kabany signed a boilerplate form reading as follows:

24        Mr./Ms. Olguin, Deborah, DOB: 12/31/53, has been under my care since

25        __/__/__.   He/She has liver failu   re  manifested by decompensated

26        cirrhosis with ascites, enceph alopathy  and/or coagulopathy.  His/Her

27        prognosis  is poor without liver tran    splantation.   Based on his/her

28        terminal condition, he/she cannot work 40 hours/week, lift objects (>10

3

1   lbs), perform job duties requiring intellectual skills, operate machinery
2   or drive an automobile.
3   (Id. at 472.)
4       In his decision, the ALJ offered the following discussion of the opinion
5   evidence:
6       As for the opinion evidence, the undersigned gives great weight to the
7       State agency medical consultants' opinion.  It is consistent with Dr.
8       Siciarz's functional assessment of light work.  Treatment records show
9       office visits and prescribed medication for physical ailments without
10      adequate objective medical evidence to support an inability to sustain a
11      40-hour workweek on a regular and continuing basis or perform even
12      sedentary work, as Dr. El-Kabany mentioned.  For that reason, the
13      undersigned gives little weight to Dr. El-Kabany's overly restrictive
14      assessment.  Additionally, the claimant acknowledged she manages
15      personal needs independently, performs household chores, drives, and
16      goes shopping.
17  (Id. at 19.)
18      It is well established in the Ninth Circuit that a treating physician's opinion
19  is entitled to special weight, because a treating physician is employed to cure and
20  has a greater opportunity to know and observe the patient as an individual.
21  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  In addition, more
22  weight is generally given to the opinion of a specialist about medical issues related
23  to his or her area of specialty than to the opinion of a source who is not a specialist.
24  See 20 C.F.R. § 404.1527(d)(5).  "The treating physician's opinion is not,
25  however, necessarily conclusive as to either a physical condition or the ultimate
26  issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The
27  weight given a treating physician's opinion depends on whether it is supported by
28  sufficient medical data and is consistent with other evidence in the record.  20

4

C.F.R. §§ 404.1527(d), 416.927(d).  Where the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating physician's opinion is controverted, as will be assumed to be the case here, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Thomas, 278 F.3d at 957 (citation and quotation omitted).

First, Dr. El-Kabany's opinion is not supported by the remainder of the medical record.  While Dr. El-Kabany's generic form indicates that Plaintiff suffers from a "terminal condition" that necessitates a liver transplant, there is no support for this in the record.  On November 19, 2009, a gastroenterology treatment note indicated that Plaintiff was "clinically doing well."  (AR at 355.)  In addition, a August 26, 2010, gastroenterology note reported that Plaintiff was suffering no symptoms from her cirrhosis.  (Id. at 333.)  Most telling of the status of Plaintiff's liver disease is the repeated reports of Plaintiff's Model for End-Stage Liver Disease ("MELD") score of 13.  (Id. at 347, 355, 470.)  The MELD scale ranges from 6 (less ill) to 40 (gravely ill), and, generally, liver patients are not activated for transplant until the MELD score reaches 15.  See United Network for Organ Sharing Policy For Allocation of Donated Liver Organs, Policy 3.6, http://optn.transplant.hrsa.gov/organDatasource/OrganSpecificPolicies.asp?display=Liver (follow pdf hyperlink for policy 3.6, Organ Distribution: Allocation of Livers); www.unos.org/docs/MELD_PELD.pdf).  In addition, Plaintiff was assessed a Child-Pugh rating of A, the least severe rating possible under the Child-

Pugh scale for assessing liver disease and not sufficient for listing of the patient for liver transplantation.  See Harrison's Manual of Medicine 17/e, Table 163-3: Child-Pugh Classification of Cirrhosis, http://harrisons.unboundmedicine.com/ harrisons/ub/index/Harrisons-Manual-of-Medicine/ (follow "Tables" hyperlink; then follow "Cirrhosis, Child-Pugh Classification of" hyperlink).  Ultimately, there is no evidence in the record to support Dr. El-Kabany's severely restricted physical assessment of Plaintiff.  In fact, all of the evidence is to the contrary.

In addition, the ALJ correctly pointed out that Plaintiff's admitted activities of daily living far surpass the limitations noted by Dr. El-Kabany.  According to the Exertion Questionnaire authored by Plaintiff, since being diagnosed with liver disease, she has remained capable of household shopping about three times a week, laundry, driving 10 to 15 hours a week, and other household duties.  (AR at 32, 40, 238-40.)  She is capable of lifting a vacuum and a gallon of milk, and requires only a 30-minute rest period during the day.  (Id. at 89, 239, 240.)  These activities are not supportive of the level of restriction assessed by Dr. El-Kabany.

Accordingly, the Court finds that the ALJ rejected the generic assessment by Dr. El-Kabany on the basis of specific and legitimate reasons supported by substantial evidence in the record.  Thus, there was no error.

**C.    The VE's Testimony Was Properly Supported.**

Plaintiff argues that the VE did not provide an adequate basis for her testimony regarding alternative work because she had not personally observed the job of case aide before offering her opinion that Plaintiff was capable of performing such work.  In addition, Plaintiff argues that the VE erroneously concluded that Plaintiff had transferrable skills from her past employment because the specified skills were merely aptitudes.  Plaintiff also complains that the VE erred in concluding Plaintiff could perform the job of case aide because it was not in the same industry as her past work of property manager.  Finally, Plaintiff

1  complains that the VE's reduction in the numbers of the case aide jobs to
2  compensate for Plaintiff's limitations were unfounded.  (JS at 14-18.)

3       The VE testified that in light of Plaintiff's RFC and past job experience, she
4  would be capable of performing work as a case aide.  (AR at 99-100.)  The VE
5  further explained that her opinion was mostly consistent with the Dictionary of
6  Occupational Titles ("DOT"), but gave very detailed explanations for how it varied
7  and how she came to the conclusion that Plaintiff could perform such work.  (Id. at
8  101-04.)  Plaintiff's counsel pressed the VE on the fact that the DOT specification
9  for the case aide job requires a higher level of functioning than that of Plaintiff,
10 asking the VE if she had "seen this case aide job in and of itself performed at less
11 than what the DOT specifies it being demanded."  (Id. at 102.)  The VE responded
12 as follows:

13          It, it runs a variety, and no, I've not seen -- I've not gone to an
14      office and sat there and visualized it, that's not part of a requirement of
15      a vocational expert.  But I do keep up on all of the latest and greatest
16      documents, and periodicals, and publications that come out in my field.
17 (Id.)

18      The VE further testified that Plaintiff had the following skills that would
19 transfer from her past work as a property manager to alternate work as a case aide:

20          Oh,   very low level; very basic decision-m        aking   skills,
21      communication skills, the ability to work effectively with the public and
22      professionals, ability to work within an office, using office equipment.
23      I hope I mentioned decision-making skills, organizational planning skills
24      --
25 (Id. at 100.)

26      After an ALJ determines that a claimant cannot perform past relevant work
27 at step four, the ALJ must determine if the claimant can perform work in the
28 national economy at step five.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

1   A VE's recognized expertise provides the requisite foundation for her testimony.
2   Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).  An ALJ may take
3   administrative notice of any information the VE provides, including testimony
4   addressing the number of available jobs.  Johnson v. Shalala, 60 F.3d 1428, 1435
5   (9th Cir. 1995).

6           An ALJ may not rely on a VE's testimony regarding the requirements of a
7   particular job, however, without first inquiring whether the testimony conflicts
8   with the DOT, and if so, the reasons for the conflict.  Massachi v. Astrue, 486 F.3d
9   1149, 1152–53 (9th Cir. 2007) (citing Social Security Ruling 00–4p).  In order for
10  an ALJ to accept VE testimony that contradicts the DOT, the record must contain
11  "persuasive evidence to support the deviation."  Pinto v. Massanari, 249 F.3d 840,
12  846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435).  Evidence sufficient to
13  permit such a deviation may be either specific findings of fact regarding the
14  claimant's residual functionality, or inferences drawn from the context of the
15  expert's testimony.  Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir.), as
16  amended (1997).

17          Here, Plaintiff did not object to the qualifications of the VE and has not cited
18  any authority requiring that the VE personally observe every job to which the VE
19  refers.  To be sure, the VE exhibited an extensive understanding of the job of case
20  aide and thoroughly explained its requirements.  In addition, the VE detailed her
21  opinion as to how Plaintiff could perform the job of case aide despite the variations
22  with the DOT.  Furthermore, the VE explained the erosion of available positions
23  that would be available to Plaintiff in light of her RFC.  The VE established more
24  than sufficient qualifications to form the basis of her opinion regarding the case
25  aide position, despite never having personally observed the job being performed.

26          Moreover, the VE properly found that Plaintiff had transferable skills that
27  would assist her in performing the job of case aide.  While an aptitude is an
28  inclination, a natural ability, talent, or capacity for learning, see Webster's New

1  World Dictionary 68 (3d ed. 1988), a skill is a "learned power for doing something
2  competently." 3 Soc. Sec. Law & Practice § 43:72 (1999). In contrast to basic
3  human traits such as perception and motor skills, the abilities identified by the VE
4  constitute vocational assets learned at Plaintiff's past job and, thus, were properly
5  classified as transferable skills. Compare Paulson v. Bowen, 836 F.2d 1249, 1251-
6  52 (9th Cir. 1988) (holding that "[t]he qualities of perception and motor
7  coordination are abilities and aptitudes" and not skills); see also Anglin v.
8  Massanari,18 Fed. App'x 551, 553 (9th Cir. 2001) (finding that "knowledge of
9  office procedures (i.e., responding to telephone inquiries and knowledge of
10  different filing and distribution methods), calculating, posting, and verifying
11  financial data, and recording and retrieving data" amounted to transferable skills,
12  not aptitudes).

13      Next, Plaintiff is misguided in arguing that the job of case aide was not in
14  the same industry as her past work of property manager. In identifying the job of
15  appointment clerk, the VE testified that the DOT code for appointment clerk
16  "differs sufficiently [from property manager] to indicate it's in a different
17  industry." (AR at 98.) The VE clarified that the job of appointment clerk would
18  be "clerical versus professional technical management." (Id.) She further
19  explained that, in her opinion, Plaintiff's skills would transfer well to the job of
20  appointment clerk, "[b]ut if somebody really wanted to hold my feet to the fire I
21  would have to say it's a different industry." (Id.) To the contrary, when the VE
22  identified the job of case aide, she explained that "it's a closer match than
23  appointment clerk, actually, because it's still in the 100 first three digits of the
24  [DOT]." (Id. at 99.) The VE never testified that the jobs of case aide and property
25  manager, being so close to one another in the DOT listing, were in different
26  industries, and Plaintiff had not presented any evidence to support such a finding.
27      Finally, Plaintiff's claim fails to the extent she argues that the VE provided
28  no foundation for the erosion on numbers of case aide jobs that would be available

to Plaintiff on the basis of her physical limitations.  Plaintiff fails to recognize that the VE's expertise alone provided the basis for such testimony.  <u>Bayliss</u>, 427 F.3d at 1218 (VE's "recognized expertise provides the necessary foundation for his or her testimony"); <u>Johnson</u>, 60 F.3d at 1435 (ALJ may take administrative notice of VE testimony addressing the number of available jobs).

Because the VE provided sufficient testimony and maintained the appropriate expertise to support her testimony, the Court finds that the ALJ properly relied on the expert testimony regarding alternative work.  Thus, there was no error.

## IV.

## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: October 1, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge